UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| HEATH GOMEZ | * | | CIVIL ACTION |
| VERSUS | * | | NO. 21-945 |
| BIOMET 3i, LLC | * | | SECTION "H" (2) |

**ORDER AND REASONS**

Before me is Defendant/Counter-Plaintiff Biomet 3i, LLC's (now ZimVie, Inc. ("ZimVie")) Motion to Strike.  ECF No. 56.  Plaintiff Heath Gomez timely filed an Opposition Memorandum.  ECF No. 76.  ZimVie sought leave and filed a Reply Memorandum.  ECF Nos. 83–85.  No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the written submissions and arguments of counsel, and the applicable law, ZimVie's Motion is DENIED WITHOUT PREJUDICE for the reasons stated herein.

I.      **BACKGROUND**

Plaintiff Heath Gomez filed this suit pursuant to Louisiana's Wage Payment Act, La. Rev. Stat. §§ 23:631-642 alleging that Defendant intentionally manipulated its own bonus and incentive program to avoid paying Plaintiff the bonuses to which he was entitled at his October 16, 2020, termination.  *See* ECF No. 1-1, at 2–3.  He seeks unpaid bonus compensation in excess of $100,000 pursuant to Defendant's 2019 and 2020 Incentive Plans, as well as attorney's fees, costs, and penalty wages.  *Id.* at 4, 9.  Defendant removed the case to this court.  ECF No. 1.  Defendant denies Plaintiff's allegations and filed a counterclaim for breach of contract seeking to recover $12,802.56 relating to a COVID-19 advance.  ECF No. 13, ¶¶ 8–17, at 10–11.

1

Before filing this suit, Plaintiff appealed the denial of his severance benefits under ZimVie's ERISA plan. ECF No. 56-1, at 1. Defendant produced 300 pages of documents in that administrative proceeding, which production included privileged communications that were produced pursuant to the fiduciary exception to the attorney-client privilege as stated in the attached cover letter explaining that Plaintiff had the right to access the communications but did not have the right to disclose them to third parties. *Id.* at 1–2; *see also* ECF Nos. 56-2; 56-3, at 1. Despite the stated limitation, on March 7, 2022, Plaintiff filed emails over which Defendant claims privilege in connection with Plaintiff's Opposition to Defendant's Motion for Protective Order. ECF No. 35-1. Defendant asked Plaintiff to request that these records be sealed, but Plaintiff refused. ECF No. 56-1, at 2. Defendant argues that, although the ERISA fiduciary exception to the attorney-client privilege allows a participant the right to review privileged communications, the communications remain privileged and the participant does not have the right to disclose those communications to any third party. *Id.* Accordingly, ZimVie moves to strike ECF No. 35-1 from the court record.

Plaintiff opposes the motion and argues that ZimVie voluntarily produced the documents pursuant to the fiduciary exception to the attorney-client privilege, and either waived the privilege by production and/or delaying three weeks to file this motion to strike, and/or has no right to assert privilege because it is not the holder of the privilege. ECF No. 76, at 1–2, 4. Plaintiff asserts that ZimVie's failure to provide an affidavit or declaration to support the assertion of privilege justifies denial of the motion, and that the 66-page pdf (ECF No. 35-1) includes non-privileged documents such as letters from Plaintiff's counsel to Defendant. *Id.* at 1–3. Citing *Wildbur v. Arco Chemical Co.*, 974 F.2d 631 (5th Cir. 1992), Plaintiff contends that the privilege belongs to him and not to Defendant as he is the plan beneficiary, and therefore, ZimVie cannot assert the attorney-client

privilege against Plaintiff about legal advice dealing with plan administration. *Id.* at 3 (also citing

*Firefighters' Retirement System v. Citco Group Ltd*., No. 13-373, 2018 WL 305604, at *8 (M.D.

La. Jan. 5, 2018)).  Because the privilege does not belong to ZimVie, Plaintiff argues, it has no

right to dictate how the information is used.  *Id.* at 4.

In Reply, ZimVie argues that the documents are privileged on their face (i.e., legal

communications between the Jackson Lewis firm and its client ZimVie discussing legal matters

with no third parties copied on the documents).  ECF No. 85, at 3.  It argues that Plaintiff had no

legitimate purpose to file the documents into the court record, Plaintiff filed the documents in the

record solely to "foment litigation," and while ZimVie recognizes the fiduciary exception allows

Plaintiff to review the documents, it does not render Plaintiff the sole owner of the privilege when

in fact hundreds of employees are plan participants for whom he cannot waive the attorney-client

privilege.  *Id.* at 2–3.  It argues Plaintiff conflates his own right to review the documents with the

right to disclose the documents and waive the privilege for all plan participants.  *Id.* at 4.

## II.      APPLICABLE LAW

### A.  The Attorney-Client Privilege

The  attorney-client  privilege  is  the  oldest  of  the  privileges  for  confidential

communications.[1]  The purpose of the attorney-client privilege is well-established: to encourage

candid communications between client and counsel and thereby promote broader public interests

in the observance of law and administration of justice.[2]  The applicability of the attorney-client

privilege "is a question of fact, to be determined in the light of the purpose of the privilege and

guided by judicial precedents."[3]

---

[1] *Hodges, Grant & Kaufman v. United States,* 768 F.2d 719, 720 (5th Cir. 1985); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citing 8 J. WIGMORE, EVIDENCE § 2290 (J. McNaughton rev. 1961)).
[2] *See Upjohn*, 449 U.S. at 390–91; *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).
[3] *Hodges,* 768 F.2d at 721.

While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."[4]  Thus, not all communications between a client and his or her attorney are protected by the attorney-client privilege,[5] and the privilege "does not embrace everything that arises out of the existence of an attorney-client relationship."[6]  "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."[7]

Privilege must be assessed on a document-by-document basis to determine the propriety of the privilege application because a blanket assertion of privilege over categories of documents is improper.[8]  A party invoking the attorney-client privilege bears the burden of demonstrating its applicability and must show:  (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.[9]  Disclosure of privileged communications to a third party generally eliminates the confidentiality of the attorney-client privilege and serves to waive the privilege.[10]  This waiver rule, however, is subject to certain exceptions such as common legal interest[11] or disclosure to agents or representatives whose services are necessary for effective legal

---

[4] *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citations omitted).
[5] *United States v. Pipkins*, 528 F.2d 559, 562–63 (5th Cir. 1976) (stating that the attorney-client privilege "is not a broad rule of law which interposes a blanket ban on the testimony of an attorney.").
[6] *Id.* at 563.
[7] *United States v. El Paso Co*., 682 F.2d 530, 538 (5th Cir. 1982) (internal quotations and citation omitted); *see also Hodges,* 768 F.2d at 720 (citation omitted).
[8] *El Paso*, 682 F.2d at 539, 541.
[9] *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original) (citations omitted).
[10] *Hodges*, 768 F.2d at 721.
[11] *In re Santa Fe Int'l Corp*., 272 F.3d 705, 710-13 (5th Cir. 2001); *see also BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc*., 614 F. App'x 690, 704 (5th Cir. 2015); *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002).  Courts have limited this privilege to parties with a common legal interest in litigation, and have not extended the common legal interest privilege to generalized shared business interests.  *See King v. Univ. Healthcare Sys., L.C*., No. 08-1060, 2009 WL 10679780, at *4 (E.D. La. Jan. 15, 2009) (Wilkinson, M.J.) (noting "this rule is limited to parties to litigation."); *Crosby v. Blue Cross Blue Shield of La.*, No. 08-0693, 2012 WL 5450040, *4 (E.D.

representation and to whom disclosure is made for purpose of effecting legal representation and

while acting in the course and scope of employment for the client.[12]

### B.  ERISA Fiduciary Exception to Attorney-Client Privilege

English courts developed the fiduciary exception in the law of trusts to make clear that,

when a trustee obtains legal advice to guide the administration of the trust, and not for the trustee's

own defense in litigation, the beneficiaries were entitled to the production of documents related to

that advice.[13]  In *Riggs National Bank of Washington, D.C. v. Zimmer*,[14] the leading American

case on the fiduciary exception,[15] trust beneficiaries moved to compel the trustees to produce a

legal memorandum related to the administration of the trust that the trustees withheld on the basis

of attorney-client privilege.[16]  The Delaware Chancery Court looked to the English cases and

applied the common-law fiduciary exception for two reasons:  (1) the trustees had obtained the

legal advice as "mere representative[s]" of the beneficiaries and thus the beneficiaries were the

"real clients;" and (2) the trustees' fiduciary duty to furnish trust-related information to the

beneficiaries outweighed their interest in the attorney-client privilege.[17]

---

La. Nov. 7, 2012) (Roby, M.J.) (holding that no common legal interest privilege existed between plaintiff and non-party doctors even though both wanted insurance coverage for the claim).

[12] *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, 2018 WL 2323424, at *4 (M.D. La. May 22, 2018) (citations omitted); *Action Ink, Inc. v. Anheuser-Busch, Inc.*, No. 12-141, 2012 WL 12990577, at *2 (E.D. La. Dec. 19, 2012) (Wilkinson, M.J.); 24 CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE, §§ 5482, 5483 (1986); *see also BCR Safeguard Holding*, 614 F. App'x at 704 n.22 (citing *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976)); *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

[13] *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011) (citing *Wynne v. Humberston*, 27 Beav. 421, 423–424, 54 Eng. Rep. 165, 166 (1858); *Talbot v. Marshfield*, 2 Dr. & Sm. 549, 550–551, 62 Eng. Rep. 728, 729 (1865)).  The courts reasoned that the normal attorney-client privilege did not apply because the legal advice was sought for the beneficiaries' benefit and was obtained at the beneficiaries' expense by using trust funds to pay the attorney's fees. *Ibid.*; *Wynne*, 27 Beav. at 423–424, 54 Eng. Rep., at 166.

[14] 355 A.2d 709 (Del. Ch. 1976).

[15] *Jicarilla Apache Nation*, 564 U.S. at 171.

[16] *Id.* (citing *Riggs Nat. Bank of Washington, D.C.*, 355 A.2d at 711–12).

[17] *Jicarilla Apache Nation*, 564 U.S. at 169–73.

The Fifth Circuit adopted the fiduciary exception in the ERISA context in *Wildbur v. ARCO Chemical Co.*:[18]  "[A]n ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration."[19]  The *Wildbur* court reasoned that an ERISA plan is a separate legal entity from its sponsor and the plan's administrator owes a fiduciary duty to the plan's beneficiaries, not its sponsor, and when an attorney advises a fiduciary/plan administrator concerning plan administration, the clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator.[20]  When, however, the interests of a plan participant diverge from the interests of the plan itself, communications going forward are no longer privileged.[21]

### C.  Motion to Strike or Seal Documents

A motion to strike is governed by Rule 12(f), which provides:

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
(1) on its own; or
(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).  The Fifth Circuit has questioned the appropriateness of the motion to strike in light of Rule 7(a).[22]  By its own terms, a motion to strike is directed to pleadings, which Rule 7 defines as the complaint, answer, answer to a counterclaim, answer to a crossclaim, third-party

---

[18] 974 F.2d 631 (5th Cir. 1992).

[19] *Id.* at 645 (citing *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982)).

[20] *Id.* (citing *Washington Star Co.*, 543 F. Supp. at 909).

[21] *E.g., Wildbur*, 974 F.2d at 645 (upholding a magistrate's finding that the fiduciary exception was inapplicable to communications from counsel to plan administrator concerning the defense of a pending lawsuit because there was no mutuality of interest creating a fiduciary relationship).

[22] *United States v. Coney*, 689 F.3d 365, 379 n.5 (5th Cir. 2012) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f).") (internal citation & quotation omitted).

complaint, and reply to an answer.  Fed. R. Civ. P. 7(a).  Courts applying Rule 12(f) have, however, granted motions to seal documents at issue.[23]

Despite Rule 12(f), courts have nonetheless granted motions to strike exhibits.  For instance, in *Xavier v. Belfor USA Group, Inc*., No. 06-491, 06-7084, 2008 WL 4862533 (E.D. La. Sept. 23, 2008), Judge Zainey granted a motion to strike and refused to consider affidavits that were translated by an unidentified translator.  While acknowledging that Rule 12(f) is limited to "pleadings," Judge Zainey explained that the Federal Rules long ago abandoned "the more technical forms of common law practice" and, in reliance on Rule 1, courts routinely excuse technical pleading defects to treat motions to strike as motions to determine admissibility of evidence.[24]  Judge Morgan has likewise granted a motion to strike an affidavit that improperly attached attorney-client privileged communications.[25]  Since a motion to strike an affidavit does not fall within Rule 12(f), it is not subject to Rule 12(f)'s 21-day period.[26]

Courts have sealed documents when denying motions to strike.  However, the working presumption should be that judicial records are not sealed, and courts should be ungenerous with their discretion to seal judicial records.[27]  Public access to judicial records helps to promote trust

---

[23] *Mendoza v. Doyle Int'l La., LLC*, No. 17-437, 2019 WL 5391389, at *3 (M.D. La. Oct. 22, 2019) (granting alternative request to seal document after holding document did not fall within Rule 12(f)).

[24] 2008 WL 4862533, *1 (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (Online ed. 2007) ("[A]s is true in other contexts, the technical name given to a motion challenging a pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike . . . ."); CJS FED. CIV. PROC. § 497 (although affidavits technically do not constitute pleadings, courts have permitted affidavits to be challenged by motions to strike because the Federal Rules provide no other means to contest their sufficiency)); *see also Jordan v. Cobb Cnty.*, 227 F. Supp. 2d 1322, 1346-47 (N.D. Ga. 2001) (treating motion to strike affidavit as a notice of objection)*; Morgan v. Sears Roebuck & Co*., 700 F. Supp. 1574, 1575 (N.D. Ga. 1988) (same).

[25] *See, e.g., Gibbens v. Quality Rental Tools, Inc*., No. 13-6401, 14-288, 2015 WL 1125168, *3–4 (E.D. La. Mar. 12, 2015) (Morgan, J.) (granting motion to strike attorney-client privileged communication from the record); *see also Anderson v. Georgia Gulf Lake Charles, LLC*, No. 07-1378, 2008 WL 919716, at *1 (W.D. La. 2008) (treating a motion to strike an affidavit as procedurally sound).

[26] *Estate of Albritton v. United States*, No. 98-859, 2001 WL 34046166, at *1 (M.D. La. Dec. 10, 2001) (holding that motion to strike affidavit was not untimely as that rule governs motions pertaining to pleadings).

[27] *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (citing *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418-19 (5th Cir. 2021)).

in the judicial process, and courts must be mindful of the public's common law right to inspect and copy judicial records in assessing a request to seal documents and balance that right against the interests favoring nondisclosure.[28]   The public's common law right is not absolute, and the power to seal court records is reserved to the sound discretion of the trial court.[29]   It is not enough, however, for the parties to simply agree that a judicial record should be filed under seal because courts are duty-bound to protect public access to judicial proceedings and records. [30]

Sealing court documents "must be justified and weighed against the presumption of openness that can be rebutted only by compelling and countervailing interests favoring nondisclosure."[31]   The party seeking to overcome the presumption of public access bears the burden to show that its privacy interests outweigh the presumption, and the court should construe any doubt in favor of disclosure.[32]   The party seeking to seal a document "must explain in particularity the necessity for sealing[.]"[33]   This requires the movant to not only point to specific confidential information contained in the document, but also show the specific harm that would be suffered if the public were granted access to this document.[34]   When a document reflects confidential medical records,[35] confidential business information,[36] or confidential attorney-client communications, the court may be justified in sealing those specific portions of the document at

---

[28] *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *see also Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir.1981).

[29] *Nixon*, 435 U.S. at 598-99*; see Belo*, 654 F.2d at 430.

[30] *Binh Hoa Le,*990 F.3d at 420.

[31] *Id.* at 421.

[32] *Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 2377119, at *4 (E.D. La. Aug. 16, 2007) (Vance, J.) (citing *Leucadia, Inc. v. Applied Extrusion Techs., Inc*., 998 F.2d 157, 165 (3d Cir. 1993); *Marcus v. St. Tammany Par. Sch. Bd*., No. 95-3140, 1997 WL 313418, at *5 (E.D. La. June 9, 1997)).

[33] *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019).

[34] *Omega Hosp., LLC v. Cmty. Ins. Co.*, No. 14-2264, 2015 WL 13534251, at *4 (E.D. La. Aug. 12, 2015) (citing *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (E.D. La. Aug. 12, 2015)).

[35] *Ardoin v. CCC Ass'n, Inc.*, No. 20-1054, 2022 WL 420765, at *2 (E.D. La. Feb. 11, 2022) (Vance, J.) (deciding interest in protecting a non-party's medical information outweighs the interest in access to judicial records).

[36] *N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 203-04 (citing *Nixon*, 435 U.S. at 598).

issue.[37]  The movant must, however, address the issue on a "'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure.'"[38]

## III.    ANALYSIS

Although Rule 12(f) does not apply to a motion seeking to strike an affidavit, given the prejudice that would arise from allowing a party to file confidential or privileged communication into the Court record without recourse, the Court will address the merits of the request to either strike or seal ECF No. 35-1.

Neither party disputes the basic proposition that Plaintiff is entitled to receive copies of the documents reflecting legal advice obtained by the plan administrator/trustee regarding plan administration as he is a beneficiary and thus falls within the fiduciary exception, and both parties spend the majority of their briefing addressing that issue.  The parties do not, however, address the salient issues:  (1)  whether a beneficiary (like Plaintiff) who receives protected communications can waive the privilege that jointly belongs to all plan participants to disclose or make public confidential communications without the consent of the other plan participants; and (2) whether the plan administrator has standing to assert the attorney-client privilege on behalf of plan beneficiaries who have not consented to the disclosure of the attorney-client communications at issue?  Fifth Circuit jurisprudence suggests that a jointly owned privilege cannot be waived by one party without the consent of the other co-parties,[39] but neither Plaintiff nor Defendant addresses either this issue or the issue of standing.

---

[37] *Ardoin*, 2022 WL 420765, at *2 (sealing only the portions of deposition testimony that make reference to medical records). *see also*

[38] *Le*, 990 F.3d at 419 (quoting citation omitted) ("Sealings must be explained at 'a level that will allow for this Court's review.'" (quoting *United States v. Sealed Search Warrants*, 868 F.3d 385, 387 (5th Cir. 2017))).

[39] *In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992) (holding attorney-client privilege applies to group consulting attorney about engaging counsel and stating that "the district court was clearly erroneous as to its conclusions of law when it ruled that . . . one of the jointly interviewed prospective clients could waive the privilege as to all participants.").

At this point, however, this Court need not resolve those issues because movant has simply made a blanket invocation of privilege and/or request to seal. A review of ECF 35-1 reflects numerous different communications, some of which involve third parties or are not even communications between an attorney and the plan administrator and other documents that, while communications between counsel and the plan administrator, do not reflect confidential communications for the primary purpose of securing legal advice or assistance. Accordingly, movant must show, on a document-by-document basis, that the content involves: (1) a confidential communication; (2) to a lawyer; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. Further, assuming favorable resolution of the privilege waiver and standing issues that neither party addressed, movant has not identified, on a document-by-document, line-by-line basis, the particular documents or portions of documents that should be stricken or sealed.

## IV.   **CONCLUSION**

Without establishing that the attorney-client privilege applies on a document-by-document basis as to every document included in ECF No. 35-1, Defendant's motion must be denied. Defendant may re-file a motion to strike or alternative motion to seal which specifically identifies, on a document-by-document, line-by-line basis, information that it contends is protected by the attorney-client privilege and for which movant can overcome the presumption of public access by showing its privacy interests outweigh the presumption of public access as necessary to seal the documents should they not be stricken. Any such motion must also address the issues of standing and privilege waiver by one party without the consent of co-parties.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant/Counter-Plaintiff Biomet 3i, LLC's Motion to Strike (ECF No. 56) is DENIED WITHOUT PREJUDICE for the reasons stated herein.

New Orleans, Louisiana this 2nd day of May, 2022.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE